IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SKYNET ELECTRONIC CO., LTD,

    Plaintiff,

v.

FLEXTRONICS INTERNATIONAL, LTD., and POWER SYSTEMS TECHNOLOGY, LTD.,

    Defendants.

No. C 12-06317 WHA

**ORDER DENYING MOTION TO COMPEL**

## INTRODUCTION

In this patent infringement action involving power-converter technology, defendants move to compel production of withheld documents. For the reasons stated below, the motion to compel is **DENIED**.

## STATEMENT

The present motion to compel production concerns two documents, SKY003200-3203 and a referenced memorandum, allegedly on the same subject-matter. Plaintiff claims these documents are protected by attorney-client privilege and work-product immunity. Defendants allege that any protections were vitiated by fraud or waiver.

The disputed documents include an email chain that contains legal advice from Frederick Frei, counsel for Skynet Electronic Co. (a Taiwanese company), to Skynet's founder and president, Jim Liang. The email communication referenced a legal memorandum, prepared by

1  counsel Andrew Kurth, containing the preliminary legal opinions and mental impressions of
2  Skynet's U.S. counsel with regard to a proposed patent certificate of correction.

3        This document was seemingly inadvertently turned over to defendants Flextronics
4  International Ltd., and Power Systems Technology Ltd., during discovery in this action. On
5  September 10, 2013, counsel for Flextronics notified Frei that one of its document reviewers had
6  identified a document that included a communication from Skynet's U.S. counsel to Skynet,
7  SKY003200-003203 (Weinberg Decl. ¶ 5, Exh. D). Flextronics informed Skynet that it believed
8  attorney-client privilege to the document had been waived because it appeared the communication
9  from Skynet's U.S. counsel had been disclosed to a third party (*id*. at ¶ 6, Exh. G). Skynet
10 conceded that it had sent SKY003200-3203 to Ling-Chi Hsu, whom Skynet described as an
11 administrative assistant to Gwo-Jye Yan, a Taiwanese patent attorney (*id*. at ¶ 14, Exh. P).
12 According to Skynet, Ling-Chi Hsu reviewed emails intended for, but not addressed to, Gwo-Jye
13 Yan, and responded to those emails, "providing Mr. Yan's direction" (*ibid*.). Skynet identified
14 Yan as a Taiwanese patent attorney and claimed attorney-client privilege had not been waived.

15       In Taiwan, however, patent attorneys are similar to U.S. patent agents, in that they need
16 not be attorneys-at-law, nor do they have a license to practice law or are subject to the Taiwan
17 bar. The Taiwan Ministry of Justice maintains a registry of all persons licensed to practice law in
18 Taiwan (C. H. Yiou Decl. ¶ 6). Gwo-Jye Yan does not appear on the Ministry of Justice's
19 registry of persons licensed to practice law in Taiwan and does not appear to be a member of the
20 Taiwan bar (*id*. at ¶ 7). Defendants argue that because Gwo-Jye Yan is not an attorney, he
21 represents a third party under attorney-client rules and, thus, any privilege to the communications
22 has been waived.

23       Because this order holds that work-product immunity protects the documents, it need not
24 reach the question of whether the documents are also protected under attorney-client privilege.

25       On October 18, defendants filed a discovery letter brief arguing that plaintiff should be
26 compelled to turn over the email chain and referenced memorandum due to a waiver of both
27 attorney-client privilege and work-product immunity (Dkt. No. 81). On October 21, the
28 undersigned judge held that the privilege issues raised in the discovery dispute required the

2

benefits of a sworn record (Dkt. No. 84). On November 6, defendants filed this motion to compel (Dkt. No. 91). This order follows full briefing and oral argument.

## ANALYSIS

### 1. WORK-PRODUCT IMMUNITY.

Where a party asserts work-product immunity over a piece of evidence, the proponent of the privilege bears the burden of establishing its applicability to the present circumstances. *See P. & B. Marina, Ltd. v. Logrande*, 136 F.R.D. 50, 53–54 (E.D.N.Y. 1991).

Here, plaintiff bears the burden of proving each element of the privilege, including that it has not waived the privilege. *United States v. Ruehle*, 583 F.3d 600, 607–08 (9th Cir. 2009). Plaintiff argues that the subject communications were protected by work-product immunity doctrine, as the communication was sent by Skynet's U.S. counsel and was created in anticipation of litigation of the subject patent (Frei Decl. ¶¶ 2–3).

Plaintiff's claim of work-product immunity must be considered as separate and apart from claims of attorney-client privilege, as the two protections are distinct:

> The purpose of the attorney-client privilege is to encourage full disclosure of information between an attorney and his client by guaranteeing the inviolability of their confidential communications. The work product of attorney, on the other hand, is accorded protection for the purpose of preserving our adversary system of litigation by assuring an attorney that his private files shall, except in unusual circumstances, remain free from the encroachment of opposing counsel.

*Scourtes v. Fred W. Albrecht Grocery Co.*, 15 F.R.D. 55, 58 (N.D. Ohio 1953). The work-product doctrine is codified in FRCP 26(b)(3):

> (A) Documents and Tangible Things. Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . But subject to Rule 26(b)(4), those materials may be discovered if:
>
> (i) they are otherwise discoverable under Rule 26(b)(1); and
>
> (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.
>
> (B) If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.

3

1  "The work product doctrine protects from discovery documents and tangible things prepared by a
2  party or his representative in anticipation of litigation." *United States v. Richey*,
3  632 F.3d 559, 567 (9th Cir. 2011).

4  The communications at issue here were sent between Skynet and its U.S. legal counsel
5  and were created in anticipation of litigation of the subject patent (Frei Decl. ¶¶ 2–3). These
6  email communications, written by counsel Frei, and the referenced legal memorandum, prepared
7  by counsel Andrew Kurth, contained the preliminary legal opinions and mental impressions of
8  Skynet's U.S. counsel with regard to a proposed certificate of correction. Frei was not
9  responsible for prosecuting the certificate of correction. Rather, his job was to "actively engage
10 in analyzing the issue and providing Skynet with various legal opinions" (*id*. at ¶ 2).
11 Furthermore, counsel was aware that the communications could be sought in future litigation and,
12 therefore, "sought to protect [them] from disclosure" (*ibid.*). Accordingly, these communications
13 constitute work product under FRCP 26(b)(3).

14 **2. WAIVER OF WORK-PRODUCT IMMUNITY.**

15 Once work-product immunity has been established, the question then becomes whether
16 plaintiff waived immunity by disclosing the email to its patent agent, Gwo-Jye Yan. Defendants
17 argue that disclosure of a document to a third party waives any work-product immunity to which
18 it is otherwise entitled. In addition, defendants contend that waiver of work-product immunity as
19 to SKY003200-003203 would also waive the immunity of any other documents, explicitly the
20 referenced memorandum, that constitute advice of the same character. This argument lacks merit,
21 however, as it conflates the standard for waiver of work-product immunity with that of waiver of
22 attorney-client privilege.

23 The attorney-client privilege has its basis in the confidential nature of the communication
24 and the reason for the privilege ordinarily ceases to exist if confidentiality is destroyed by
25 voluntary disclosure to a third person. On the other hand, the purpose of work-product immunity
26 is not to protect the evidence from disclosure to the outside world, but rather to protect it only
27 from the knowledge of opposing counsel and client, thereby preventing its use against the lawyer
28 gathering the materials. 8 Fed. Prac. & Proc. Civ. 2024 (3d ed.). Thus, disclosure of a document

4

to a third person does not waive work-product immunity, unless it has substantially increased the opportunity for the adverse party to obtain the information.

If a document otherwise protected by work-product immunity is disclosed to others with an actual intention, or reasonable probability, that an opposing party may see the document, the party who made the disclosure cannot subsequently claim work-product immunity. *In re Imperial Corp. of Am.*, 167 F.R.D. 447, 456 (S.D. Cal. 1995) *aff'd*, 92 F.3d 1503 (9th Cir. 1996). A voluntary waiver, however, only occurs when "a party discloses [protected] information to a third party who is not bound [to maintain its confidence], or otherwise shows disregard for the [protection] by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719, 720 n.4–6 (9th Cir. 2003). Waiver of work-product immunity does not, however, destroy work-product immunity for other documents of the same character. *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1302 (Fed. Cir. 2006).

Here, disclosure of the work product to Yan did not make it substantially more likely that defendants would discover it. In fact, plaintiff cites extensive statutory authority for the proposition that Taiwanese patent agents are bound by law from disclosing their clients' confidential work product. For example, patent agents may "refuse to testify, divulge confidences and produce documents," according to Articles 307 and 344 of the Taiwanese Code of Civil Procedure (Chen Decl. ¶¶ 16–24).

Furthermore, although our court of appeals had not directly addressed this issue, the great weight of authority holds that disclosure of work product to individuals who share a common interest with the disclosing party does not constitute waiver. For example, in *Stix Products, Inc. v. United Merchants & Mfrs., Inc.*, the district court held that disclosure to counsel for a party with interests adverse to that of the party seeking discovery does not constitute a waiver of work-product immunity. 47 F.R.D. 334, 338 (S.D. N.Y. 1969). In *United States v. Deloitte LLP*, the D.C. Circuit held that a corporation did not waive work-product protection by disclosing documents to its independent auditor because the auditor was not an adversary of the corporation. 610 F.3d 129, 139–40 (D.C. Cir. 2010). In *Castle v. Sangamo Weston, Inc.*, the Eleventh Circuit held that transfer of work–product materials between private plaintiffs' attorneys and Equal

5

1  Employment Opportunity Commission did not constitute waiver of work–product privilege,
2  where private plaintiffs' attorneys and counsel for Commission were engaged in the preparation
3  of a joint-trial at time transfer was made. 744 F.2d 1464, 1466–67 (11th Cir. 1984). *In Goff v.*
4  *Harrah's Operating Co., Inc.*, the court held that work-product immunity is not based on the
5  confidentiality of the attorney–client relationship, and it does not disappear when the wall of
6  confidentiality is breached, unless the breach has substantially increased the opportunities for
7  potential adversaries to obtain the information. 240 F.R.D. 659, 661–62 (D. Nev. 2007). Finally,
8  in *Ceco Steel Products Corp. v. H. K. Porter Co.*, the district court held that even where a
9  disclosure to a third person was sufficient to create waiver of the attorney-client privilege, there
10  still was not sufficient waiver of the work-product immunity. 31 F.R.D. 142, 143 (N.D. Ill.
11  1962).
12  In agreement with the above stated authority, this order holds that the disclosure of
13  work-product materials to Gwo-Jye Yan was not sufficient to waive work-product immunity.
14  As for the memorandum referenced in SKY003200-3203, even if the work-product
15  immunity of the email chain had been waived, immunity for other documents of the same
16  character was not. *See In re EchoStar Commc'ns Corp.*, 448 F.3d at 1302. Accordingly,
17  defendants' argument that work-product immunity of the referenced memorandum was waived
18  fails.

19  **A.     Failure To Adequately Protect The Information.**

20  Defendants raise several other arguments as to why work-product immunity should be
21  waived. *First*, defendants argue that Skynet's failure to take adequate precautions also waived
22  any protection (Reply Br. 8). FRE 502(b) governs the question of whether the disclosure of a
23  privileged document *constitutes a waiver* of the privilege. Under FRE 502(b), there is no waiver
24  where "the holder of the privilege or protection took reasonable steps to prevent disclosure and
25  the holder promptly took reasonable steps to rectify the error."
26  Plaintiff provides nearly four pages of its opposition detailing the various steps it took to
27  ensure that protected documents were not turned over during the discovery process (Opp. 13–16).
28  In total, Skynet's attorneys reviewed over 36,397 documents (Wooden Decl. ¶12). Despite

6

1   SKY003200-3203 being inadvertently turned over to defendants, plaintiff has shown that its

2   efforts were in compliance with FRE 502(b).  Within two hours of being alerted that

3   SKY003200-3203 had been turned over to defendants, Skynet formally asserted a claim of

4   immunity over the document and requested its return (Weinberg Decl., Exh. F).  Accordingly,

5   each provision of FRE 502(b) has been met.

### B.      Evidence At Issue In The Action.

*Second*, defendants argue that plaintiff has admitted that it prepared the document in anticipation of litigation, thus placing in issue Liang's good faith state of mind in requesting the certificate of correction from the USPTO (Reply Br. 9).  Defendants do not explain, however, how this action would constitute a waiver of work-product immunity.  Plaintiff's mere assertion that the filing of the certificate of correction "would lead to litigation," does not prove that the filing was improper (Opp. 6).  Accordingly, this cannot serve as the basis for waiver of immunity.

### C.      Crime-Fraud Waiver.

*Third*, defendants argue that the disputed documents contain evidence that plaintiff did not deal in good faith with the USPTO when it sought the certificate of correction.  Defendants contend that any immunity attached to the documents should be waived under the crime-fraud exception.  Defendants must meet a two-part test in order to satisfy the crime-fraud exception:

> *First*, the party must show that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme. *Second*, it must demonstrate that the attorney-client communications for which production is sought are sufficiently related to and were made in furtherance of [the] intended, or present, continuing illegality.

*In re Grand Jury Investigation*, 231 Fed. Appx. 692, 696 (9th Cir. 2007) (internal citations omitted) (emphasis added).  Defendants argue that the documents demonstrate plaintiff's counsel in the United States believed that filing a request for a correction to the patent was improper and constituted a fraud on the USPTO.  It should be noted that defendants have never had access to the referenced memorandum, so their arguments as to this document constitute mere speculation.  As for the email chain, SKY003200-3203, this order finds nothing in that document that proves that plaintiff intended to commit a criminal or fraudulent scheme against the USPTO.  The undersigned judge reviewed certified English translations of SKY003200-3203, submitted by

7

plaintiff and defendants, and finds no evidence of fraud justifying a waiver of work-product immunity. Accordingly, defendants have failed to make a showing of plaintiff's deceptive intent and reliance by the USPTO. Thus, the crime-fraud exception had not been satisfied. (The Court has neither requested nor received the referenced memorandum, there being no necessity to do so).

## CONCLUSION

For the foregoing reasons, defendants' motion to compel is **DENIED**.

**IT IS SO ORDERED.**

Dated: December 16, 2013.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE